**L.W. PARKER,**

v.

**The FROST NATIONAL BANK OF SAN ANTONIO, Surviving Bank by Merger With Frost Bank North Austin, N.A.,**

No. 3–92–281–CV.

Court of Appeals of Texas, Austin.

April 28, 1993.

Rehearing Overruled June 9, 1993.

Terry R. Tippit, Terry L. Belt, Austin, for appellant.

Traci L. Cotton, Deitch & Hamilton, P.C., Austin, for appellee.

Before CARROLL, C.J., and JONES and KIDD, JJ.

KIDD, Justice.

The Frost National Bank of San Antonio (the "Bank"), the surviving bank by merger with the Frost Bank North Austin, N.A. (the "Frost Bank"), sued L.W. Parker on two real estate lien notes. The Bank sought judgment for a post-foreclosure deficiency claim on the first note and for the full balance due on the second note. Parker counterclaimed for wrongful foreclosure. Following a bench trial, the district court rendered judgment in favor of the Bank on all matters. Parker appeals only on the issues of his liability for the deficiency on the first note and his wrongful foreclosure counterclaim. We will affirm the judgment of the district court.

## BACKGROUND

On July 16, 1987, L.W. Parker executed a promissory note ("Note 1") payable to the Frost Bank in the sum of $405,000. The note was secured by a deed of trust lien on property located in Travis County. Parker did not use this property as his residence. Parker defaulted on his Note 1 payments. On March 22, 1988, Parker executed another promissory note ("Note 2") payable to the Frost Bank in the amount of $40,000. This note also was secured by a deed of trust lien on a separate piece of property located in Travis County. Parker made no payments on Note 2.

On July 12, 1988, the Bank sent Parker a certified letter notifying him that Note 1 was in default and that the entire unpaid balance of the note was accelerated. The Bank also gave Parker notice of the posting of the property and notice of the substitute trustee's sale to be held on August 2, 1988. At some time after 3:30 p.m., on July 12, 1988, the notice of the substitute trustee's sale was filed with the County Clerk of Travis County and was posted in the Travis County Courthouse. On August 2, 1988, the Bank purchased the property at public auction for $350,000 and applied the bid amount to the indebtedness owing under Note 1.

The Bank brought suit against Parker for the deficiency under Note 1 and for the balance due under Note 2. Parker counterclaimed for wrongful foreclosure and breach of contract. After a bench trial pursuant to certain joint stipulations of fact and law, the district court rendered judgment in favor of the Bank on both notes and denied Parker's counterclaims.

Parker does not appeal the portion of the judgment relating to Note 2. Parker does, however, appeal the portion of the judgment holding him liable for the deficiency under Note 1. He contends the foreclosure is void because it was conducted in the absence of (1) timely notice of the foreclosure sale; (2) notice of the intent to accelerate; and (3) notice of the opportunity to cure. He also appeals the take-nothing judgment on his counterclaim for wrongful foreclosure.

## NOTICE OF FORECLOSURE SALE

■ Section 51.002(b) of the Property Code (the "Code") provides, in pertinent

part, that "[n]otice of the sale, which must include a statement of the earliest time at which the sale will occur, must be given at least 21 days before the date of the sale." Tex.Prop.Code Ann. § 51.002(b) (West Supp.1993). In his first point of error, Parker argues that both the day on which notice of the foreclosure is provided and the day of the sale are excluded when computing the twenty-one day notice required by section 51.002(b) of the Code. *See id.* Conceding that the day of sale is excluded in calculating the twenty-one day period, the Bank maintains that the day of notice is included in the calculation of the time period. Thus, we must determine whether section 51.002(b) of the Code requires the inclusion or exclusion of the day of notice in computing the appropriate twenty-one day notice period.

In 1973, the Tyler Court of Appeals construed the predecessor to section 51.002(b)[1] to include the day of posting notice but to exclude the day of sale. *Hutson v. Sadler*, 501 S.W.2d 728 (Tex.Civ.App.—Tyler 1973, no writ). The Texas Legislature subsequently amended the provision from "three consecutive weeks prior" to "at least twenty-one days preceding."[2] Several courts of appeals have followed the *Hutson* precedent: *Newman v. Woodhaven Nat'l Bank, Inc.*, 762 S.W.2d 374 (Tex.App.—Fort Worth 1988, no writ); *Concrete, Inc. v. Sprayberry*, 691 S.W.2d 771 (Tex.App.—El Paso 1985, no writ); *Hausmann v. Texas Sav. & Loan Ass'n*, 585 S.W.2d 796 (Tex. Civ.App.—El Paso 1979, writ ref'd n.r.e.); *see also Bryant v. Texas Am. Bank/Levelland*, 795 S.W.2d 915 (Tex.App.—Amarillo 1990, writ dism'd by agr.) (based on different rationale, court reached same result). We elect to follow the aforementioned caselaw authority holding that the day of posting is included in the calculation of the

twenty-one day notice requirement of section 51.002(b) of the Code.[3]

Parker urges us to analogize between the time period required in the present cause and the time periods required for service of process and summary judgment. Parker relies on a case involving service of process, *O'Connor v. Towns*, 1 Tex. 107 (1846), for his assertion that the "at least" language in section 51.002(b) of the Code requires both the date of posting and the date of sale to be excluded in the computation of the time period for notice. Although *O'Connor* holds that both boundary dates must be excluded in the calculation of the requisite time period, it does not hold that the words "at least" in a notice period mandate the exclusion of both boundary dates. We note that *O'Connor* involved a five day notice provision which the court described as "extremely short notice." *See id.* at 115. Therefore, to include in the computation either of the relevant days would further shorten an already short time period. Finally, we note that the notice period required in both the service of process and summary-judgment contexts are distinguishable from the notice period for foreclosure sales as they involve legal procedures other than foreclosure. We reject Parker's invitation to treat the notice provision of section 51.002(b) in the same fashion as notice for service of process and summary judgment.

It is undisputed that, on July 12, 1988, the Bank gave Parker notice of the scheduled foreclosure sale and that the sale occurred on August 2, 1988. Thus, excluding the date of sale and including the date of notice, twenty-one days expired before the date of the sale. We hold that the notice provided by the Bank complied with section

---

1. Act of May 28, 1915, 34th Leg., 1st C.S., ch. 15, § 2, 1915 Tex.Gen.Laws 32, 33 (Tex.Rev.Civ. Stat.Ann. art. 3759, since repealed) (providing that "[n]otice of such proposed sale shall be given by posting written notice thereof for three consecutive weeks prior to the day of sale.").

2. Act of May 22, 1975, 64th Leg., R.S., ch. 723, § 1, 1975 Tex.Gen.Laws 2354, 2354 (Tex.Rev. Civ.Stat.Ann. art. 3810, since repealed) (provid-

ing that notice must be posted and given "at least 21 days preceding the date of sale").

3. The Code Construction Act, Tex.Gov't Code Ann. §§ 311.001–032 (West 1988 & Supp.1993), provides for the exclusion of the first day and the inclusion of the last day in calculating a period of days; we note that the end result under the Code Construction Act would be the same as under the caselaw.

51.002(b). We, therefore, overrule Parker's point of error one.

## NOTICE OF INTENT TO ACCELERATE

In his second point of error, Parker alleges the trial court erred in its conclusion that Parker waived his right to notice of intent to accelerate with regard to Note 1.

█ It is well established that a note holder must notify the note's maker of the holder's intent to accelerate the time for payment due on a note. *Shumway v. Horizon Credit Corp.*, 801 S.W.2d 890, 892 (Tex.1991); *Ogden v. Gibraltar Sav. Ass'n*, 640 S.W.2d 232, 233 (Tex.1982). However, "a waiver of 'notice of intent to accelerate' is effective to waive that right." *Shumway*, 801 S.W.2d at 894. To be effective, the waiver of the right to notice of the intent to accelerate must be clear and unequivocal. *Id.* at 893.

█ On July 16, 1987, Parker executed the promissory note which contained the following "WAIVERS AND CONSENTS" provision: "Each of the Makers ... severally *waive* presentment for payment, demand, *notice of intent to accelerate*, notice of acceleration, protest and notice of protest, dishonor and diligence in collecting and the bringing of suit...." (Emphasis added). This language clearly and unequivocally waived Parker's right to notice of the intent to accelerate.

However, Parker urges this Court to read together three instruments [4] executed pursuant to the loan to determine their cumulative effect on the sufficiency of the waiver. He cites provisions in all three documents that contain language which *Shumway* declared was ineffective to waive the right to notice of the intent to accelerate. Parker maintains that a collective reading of these documents demonstrates contractual conflict and vagueness which violate the standards set forth in *Shumway*. We find Parker's argument unpersuasive.

The court in *Shumway* merely held that language such as that cited by Parker is insufficient to waive the right to notice of the intent to accelerate; the court did not hold that such language ensures the right to notice and forever bars a maker from waiving the right in another document. Every instrument executed in conjunction with a promissory note need not contain the necessary language in order to effectively waive the right to notice; such a requirement is unnecessarily duplicative. It is logical that the appropriate language for waiver of any rights evolving from the creation of the note would be included in the section of the note entitled "waivers and consents" and need not be included elsewhere. Therefore, we hold it was not error for the trial court to conclude that Parker had waived his right to notice of the intent to accelerate. We overrule point of error two.

## NOTICE OF OPPORTUNITY TO CURE

█ Parker alleges, in his third point of error, that the trial court improperly rendered judgment against him because the Bank did not provide notice of the opportunity to cure pursuant to section 51.002(d) of the Code which provides:

> Notwithstanding any agreement to the contrary, the holder of the debt shall serve a debtor in default under a deed of trust or other contract lien on real property used as the debtor's residence with written notice by certified mail stating that the debtor is in default under the deed of trust or contract. The debtor must be given at least 20 days to cure the default before the entire debt is due and notice of sale is given.

Tex.Prop.Code § 51.002(d) (West Supp. 1993). Specifically, Parker argues that section 51.002(d) of the Code imposes two distinct obligations on foreclosing lenders: (1) written notice of default must be provided to all home mortgagors and (2) all debtors, not only home mortgagors, must be given the opportunity to cure. We find this con-

---

**4.** These instruments are the promissory note itself, the deed of trust, and the master form deed of trust.

struction implausible. The two sentences in section 51.002(d) complement each other: the first sentence imposes the written notice requirement, and the second sentence establishes the amount of time that must be given to cure subsequent to such notice and prior to acceleration. *See Savers Fed. Sav. & Loan Ass'n v. Reetz,* 888 F.2d 1497, 1507 (5th Cir.1989) ("[I]n the case of 'real property used as the debtor's residence,' the debtor must ... be given 'at least 20 days to cure the default before the entire debt is due and notice of sale is given.'"). Therefore, we conclude that the second sentence, like the first sentence, applies only to defaults under liens on real property used as the debtor's residence. Accordingly, because the property in question was not used as Parker's residence, the Bank was not required to comply with section 51.002(d) of the Code. We overrule Parker's third point of error.

### WRONGFUL FORECLOSURE

In his fourth point of error, Parker alleges that the district court erred in rendering judgment that he take nothing on his counterclaim for wrongful foreclosure because the foreclosure was void for the reasons he stated in his first three points of error. Because we held that the Bank complied with the statutory notice requirements and with the deed of trust, we conclude that the take-nothing judgment rendered on the wrongful foreclosure counterclaim was not in error. We, therefore, overrule Parker's fourth point of error.

### CONCLUSION

Finding no error, we affirm the judgment of the district court.