

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-20-00224-CV

———————————————

REGINA NACHAEL HOWELL FOSTER, Appellant

V.

OCWEN LOAN SERVICING, LLC AND DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR MORGAN STANLEY ABS CAPITAL 1 INC. TRUST 2005-HE1, MORGTAGE PASS-THROUGH CERTIFICATES, SERIES 2005-HE 1, Appellees

---

On Appeal from the 48th District Court
Tarrant County, Texas
Trial Court No. 048-316777-20

---

Before Kerr, Birdwell, and Wallach, JJ.
Memorandum Opinion by Justice Wallach

## MEMORANDUM OPINION

Appellant Regina Nachael Howell Foster, a licensed attorney,[1] agreed to use the property where she lived with her husband (the Property) as collateral for her husband's mortgage refinance loan. After her husband defaulted, Foster sued Appellees Ocwen Loan Servicing, LLC and Deutsche Bank National Trust Company, as Trustee for Morgan Stanley ABS Capital 1 Inc. Trust 2005-HE1, Mortgage Pass-Through Certificates, Series 2005-HE 1, (collectively Defendants) to have the deed-of-trust lien declared invalid and to stop foreclosure proceedings. Her suit was unsuccessful, and a foreclosure sale followed. Foster then sued Defendants (and others) a second time, this time challenging the foreclosure procedures and again seeking to have the deed-of-trust lien declared invalid. The trial court granted summary judgment for Defendants. On appeal, Foster challenges the summary judgment in six issues, under which she primarily argues that Defendants did not send her the notice of default required by the Texas Property Code and that the lien is invalid under the Texas Constitution. Because the trial court correctly concluded that, as a matter of law, Foster's contentions about the lien's invalidity were without merit and that she was not entitled to notice of default, we affirm.

---

[1]Neither Foster's brief nor her docketing statement includes her bar number or informs the court that she is a licensed attorney, but the State Bar of Texas's website and Foster's previous filings in this court indicate that she is. *See also In re Foster*, No. 12-43804-ELM, 2020 WL 6390671, at *1 & n.3 (Bankr. N.D. Tex. Oct. 30, 2020) (noting that Foster is an attorney). Her brief does, however, identify herself as acting pro se.

## I. Background

In 2004, Foster's husband Carlos[2] signed a promissory note (the note) to refinance a 1999 mortgage on the Property. Foster was not a party to the note. She did, however, sign the deed of trust that secured the note. In signing the deed of trust, Foster agreed that she was doing so "to mortgage, grant, and convey [her] interest in the Property" under the deed of trust's terms and that she was "not personally obligated to pay the sums secured by" the deed of trust.

Ocwen became the servicer for the loan. In 2012, Ocwen sent Carlos a notice of default, and two months later, the lender transferred the lien to Deutsche. In 2013, Ocwen sent another notice of default to Carlos, warning him that failure to bring his account current would result in acceleration of the debt and foreclosure of the Property.

In March 2014, Carlos and Foster were both sent a notice of acceleration and a notice that the Property would be sold at a foreclosure sale. The day before the scheduled sale, Foster filed a petition for wrongful foreclosure in Tarrant County district court. She sought to enjoin the foreclosure and claimed that the deed of trust had failed to create a valid lien on the Property. Defendants removed this suit to federal court. The federal district court granted summary judgment for Defendants, and the Fifth Circuit Court of Appeals affirmed. *Foster v. Deutsche Bank Nat'l Tr. Co.*, No. 4:14-

---

[2]Because Foster and Carlos have the same last name, we refer to her husband by his first name to avoid confusion. Foster filed for divorce in 2012, but the record does not show that a divorce decree has ever been rendered.

CV-436-Y, 2016 WL 695658, at *1 (N.D. Tex. Feb. 22, 2016), *aff'd*, 848 F.3d 403 (5th Cir. 2017).

The law firm representing Defendants in the foreclosure process (the law firm) then sent Carlos and Foster notices of acceleration on behalf of Ocwen and, separately, notices of foreclosure sale informing them that the Property would be sold on April 4, 2017. Deutsche purchased the Property at the sale and sold it to a third party.

Foster then again filed suit in Tarrant County district court against Defendants, as well as against Carlos.[3] Defendants moved for traditional and no-evidence summary judgment, which the trial court granted without specifying the grounds. The trial court then granted Defendants' motion to sever and signed a final judgment. Foster now appeals.

## II. Discussion

Foster raises six issues in her brief. Her first three issues argue that summary judgment was improper because Defendants did not send her notice of default or of

---

[3]In the same suit, Foster also sued the law firm, and that suit is ongoing. *Foster v. Mackie Wolf Zientz & Mann, P.C.*, No. 02-20-00294-CV, 2021 WL 1134452, at *1 (Tex. App.—Fort Worth Mar. 25, 2021, no pet.) (mem. op.). Foster additionally sued the entity that purchased the Property from Deutsche and, as in this suit, challenged the validity of the lien against the Property; the Amarillo court of appeals affirmed the summary judgment for the buyer. *Foster v. Infotree Invests. & Mgmt., LLC*, No. 07-20-00031-CV, 2021 WL 298446, at *1 (Tex. App.—Amarillo Jan. 28, 2021, pet. denied) (mem. op.).

intent to accelerate.[4] Foster's fourth issue is an incomplete sentence.[5] Foster's fifth[6] and

sixth[7] issues challenge the applicability of res judicata arising from her previous suit.

Foster's brief includes arguments that do not clearly fall within any of these issues, and

---

[4]She asks whether the trial court abused its discretion by granting summary judgment when Property Code Section 51.002(d) "require[s] that notice of default, with opportunity to cure, be sent to each party under a deed of trust prior to a nonjudicial foreclosure" (issue one); when "the evidence on file with the court shows that notice of default, with opportunity to cure, was not sent to all parties under the deed of trust" (issue two); and when Texas Family Code Section 5.001 and Texas Business Code Sections 26.01 and 26.02(b) "require the joinder of both spouses on both the promissory note and the deed of trust in order that both spouses under the deed of trust receive the notice of default, with opportunity to cure and intent to accelerate" as required by Section 51.002(d) (issue three).

[5]"Did the trial court abuse its discretion by granting [summary judgment] when the evidence on file." Because this issue presents nothing for review, we overrule it.

[6]Her fifth issue asks whether the trial court abused its discretion by denying her motion for summary judgment "when the Texas Supreme Court issued three (3) decisions that change the legal landscape on foreclosures of Texas homesteads . . . after the February 22, 2016 judgment relied on by [Defendants]." The record does not, however, include any summary judgment motion filed by Foster. We construe her issue to argue that the trial court erred by granting summary judgment on the basis of res judicata.

[7]Foster's sixth issue asks whether the trial court abused its discretion by denying her motion for summary judgment on the affirmative defense of res judicata "to [her] Quiet Title when Appellee purportedly purchased the title to [her] homestead from Deutsch Bank, who had taken title on or about April 4, 2017 at non-judicial foreclosure sale of [her] homestead over (1) year after the February 22, 2016 judgment, which simply dismissed [her] claims because a foreclosure sale had not occurred." The issue refers to an appellee who purchased the Property from Deutsche, but the Property's buyer is not a party to this appeal. However, we construe this issue to argue that res judicata did not apply to her claims based on the foreclosure because those claims did not arise until after the federal court had rendered judgment.

the brief, which is at times difficult to understand, does not make clear which arguments correlate with each of her issues. For clarity, rather than following Foster's issues in order, our analysis is organized around Foster's claims and the arguments relating to them; for each claim on which Foster challenges the summary judgment, we explain the claim's basis as we understand it, Defendants' summary judgment grounds, and the parties' arguments on appeal.[8]

## A. Standard of Review

We review a summary judgment de novo. *Travelers Ins. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). We consider the evidence presented in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding evidence contrary to the nonmovant unless reasonable jurors could not. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008). A defendant that conclusively negates at least one essential element of a plaintiff's cause of action is entitled to summary judgment on that claim. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010); *see* Tex. R. Civ. P. 166a(b), (c).

---

[8]The trial court granted judgment for Defendants on all of Foster's claims. To the extent that any of Foster's claims were not addressed by Defendants' summary judgment motion, Foster does not complain on appeal that the trial court erred by granting summary judgment on those claims.

## B. No-Evidence Summary Judgment

We start by addressing the propriety of the trial court's no-evidence summary judgment.[9] For the most part, Defendants failed to specify which elements of Foster's claims had no evidence. Instead, for most of Foster's claims, Defendants identified some or all the elements for the claim, discussed why Defendants' evidence negated the claim, and concluded by saying that Foster "would have the burden of proof on this claim at trial and there is no evidence to support this claim." As Foster points out, this general language, which fails to allege which specific elements had no evidence, is not sufficient to support no-evidence summary judgment. *Cmty. Health Sys. Prof'l Servs. Corp. v. Hansen*, 525 S.W.3d 671, 695–96 (Tex. 2017); *cf. Jose Fuentes Co. v. Alfaro*, 418 S.W.3d 280, 284 (Tex. App.—Dallas 2013, pet. denied).

Defendants argue that because Foster did not file a response to the no-evidence motion, the trial court was required to grant the motion. Foster filed a late response that the trial court appeared to consider. However, regardless of whether the trial court considered her response, "[a] no-evidence motion for summary judgment that only generally challenges the sufficiency of the nonmovant's case and fails to identify the

---

[9]As in Foster's appeal in her suit against the law firm, Foster's issues on appeal do not specifically mention the technical failings of the Defendants' no-evidence motion, but based on the specific arguments in her brief, we conclude that the argument attacking the form of the motion is embraced by the issues that she raises and that it is a subsidiary issue fairly raised by her statement of issues. *See Mackie Wolf*, 2021 WL 1134452, at \*3.

specific elements of the nonmovant's claim or claims that lack supporting evidence is fundamentally defective and insufficient to support summary judgment as a matter of law." *Bever Props., L.L.C. v. Jerry Huffman Custom Builder, L.L.C.*, 355 S.W.3d 878, 888 (Tex. App.—Dallas 2011, no pet.). Accordingly, the trial court could not properly grant no-evidence summary judgment on these nonspecific grounds. Further, even when a party does not file a response to a no-evidence motion, the party may challenge the motion's legal sufficiency on appeal. *See Odeh Grp., Inc. v. Sassin*, No. 02-20-00112-CV, 2021 WL 733086, at *2 (Tex. App.—Fort Worth Feb. 25, 2021, no pet.) (mem. op.).

For some of Foster's claims, however, Defendants did specify the challenged elements in their no-evidence grounds, and on appeal, Foster does not challenge the summary judgment for those claims. We affirm the no-evidence summary judgment as to those claims.[10] For Foster's remaining claims, we sustain Foster's challenge to the no-evidence summary judgment and, in our analysis below, discuss the propriety of summary judgment only for Defendants' traditional summary judgment grounds.

---

[10]Those claims were for alleged violations of Texas debt collection laws and a substitute trustee's duty to act impartially.

## C. Propriety of Traditional Summary Judgment

### 1. Lien validity under the Texas Constitution

In the trial court, Foster and Defendants agreed that although she did not sign the refinance note, she did sign the deed of trust under which she consented to using the Property as collateral. The parties' dispute centered on the effect of Foster's lack of participation in the note. Foster alleged that because she did not sign the note, Defendants violated Article XVI, Section 50(b)[11] of the Texas Constitution and that the lien was therefore void. That constitutional provision states, "An owner or claimant of the property claimed as homestead may not sell or abandon the homestead without the consent of each owner and the spouse of each owner, given in such manner as may be prescribed by law." Tex. Const. art. XVI, § 50(b).

Defendants' summary judgment motion argued that no statute or case law requires both spouses to sign a note secured by a deed of trust that is signed by both spouses. They further asserted that Foster's claims alleging lien invalidity were barred by res judicata because of the prior federal suit. Foster's fifth and sixth issues challenge

---

[11]She also cited to Section 50 generally. On appeal, Foster argues specifically that the lien is invalid under Article XVI, Section 50(c), which provides that no deed of trust on a homestead "shall ever be valid unless it secures a debt described by this section, whether such . . . trust deed . . . shall have been created by the owner alone, or together with his or her spouse, in case the owner is married." Tex. Const. art. XVI, § 50(c). Her argument in both her petition and on appeal is essentially the same—that no valid lien could be created by the deed of trust unless she signed the underlying note—and it is that argument that we consider.

res judicata's applicability to her claim that the deed-of-trust lien is invalid under the Texas Constitution; we construe these issues to include all her arguments about the lien's invalidity.

### (a) Claims for constitutional violations

Foster's only challenge to Defendants' summary judgment evidence on res judicata's elements is an argument that Defendants did not establish that the federal court was a court of competent jurisdiction. *See Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 571 (5th Cir. 2005) (setting out the elements of res judicata under federal law); *see also Citizens Ins. Co. of Am. v. Daccach*, 217 S.W.3d 430, 449 (Tex. 2007). She argues under her sixth issue that Defendants failed to establish that the federal district court was a court of competent jurisdiction because the federal district court concluded that her claims were not ripe. *See Engelman Irrigation Dist. v. Shields Bros., Inc.*, 514 S.W.3d 746, 750 (Tex. 2017) (stating that res judicata does not apply when the first tribunal lacked subject-matter jurisdiction). Foster's characterization of the prior case's outcome is incorrect: while the federal district court did deny her wrongful foreclosure claim on the basis that no foreclosure had yet taken place,[12] the court addressed and rejected on the merits Foster's claim for lien invalidity, as then pleaded.

---

[12]Foster's sixth issue also argues that Defendants cannot rely on res judicata as to her claim based on the failure to send her a notice of default because the foreclosure, which occurred after the federal judgment, is a material change in facts. But Defendants did not assert res judicata as a summary judgment ground for this claim, and so we overrule this part of her sixth issue.

We need not address Foster's res judicata argument, however; we agree with our sister court that Foster's constitutional argument fails on the merits because Section 50 contains no requirement that both spouses sign the underlying note in a purchase money or refinance transaction. *Infotree*, 2021 WL 298446, at *4; *see* Tex. Const. art. XVI, § 50. While Foster is correct that neither spouse may encumber the homestead without the other spouse's joinder, in this case she and Carlos both agreed to the lien. *See Washington-Jarmon v. Onewest Bank, FSB*, 513 S.W.3d 103, 110 (Tex. App.—Houston [14th Dist.] 2016, no pet.) (holding that wife was not a borrower under note executed solely by husband and that wife signed the deed of trust only because the law requires both spouses to agree to homestead encumbrance). Thus, as Defendants asserted in their motion, the fact that Foster did not sign the underlying note did not make the lien invalid.

Foster relies on the Texas Supreme Court's *Pope v. Beauchamp* opinion and the United States Supreme Court's *Carpenter v. Longan* opinion to argue that "a deed of trust is meaningless against a party, unless the party has also signed a promissory note." *See Carpenter v. Longan*, 83 U.S. (16 Wall.) 271, 276 (1872); *Pope v. Beauchamp*, 219 S.W. 447, 449 (Tex. 1920). These cases do not support Foster's issues. *See Carpenter*, 83 U.S. at 275 (holding payment of debt extinguishes accompanying lien); *Pope*, 219 S.W. at 449 (holding bona fide purchaser of note has the right to rely on the lien associated with the note).

11

Foster further argues under her fifth issue that after the federal district court's judgment, the Texas Supreme Court decided three cases that apply retroactively and that under those cases, the deed-of-trust lien is invalid. *See Kyle v. Strasburger*, 522 S.W.3d 461 (Tex. 2017); *Wood v. HSBC Bank USA, NA*, 505 S.W.3d 542 (Tex. 2016); *Garofolo v. Ocwen Loan Servicing, LLC*, 497 S.W.3d 474 (Tex. 2016). As the Amarillo court pointed out, those cases involved home equity loans rather than the refinance of a purchase money loan. *See Infotree*, 2021 WL 298446, at *4. Further, none of those cases involved both spouses agreeing to the lien on their property to secure a loan that only one spouse received. *See Kyle*, 522 S.W.3d at 463; *Wood* 505 S.W.3d at 544, 551; *Garofolo*, 497 S.W.3d at 475. We overrule this part of Foster's fifth issue.

### (b) Statute of frauds

Foster contends that under the statute of frauds, the deed of trust was unenforceable because she had not signed the underlying note. She asserts in her brief that under the statute of frauds, she cannot be held liable for a debt "unless there was a written promise to expressly pay the debt bearing the signature of each party to be charged." Foster further asserts that "[c]ourts must apply the plain meaning of [Texas Constitution] Art. 16 Sec 50(c) that mandates that the loan secured by a lien must be signed as required by the statute of frauds by each owner and each owner's spouse." Because her statute of frauds argument relates to her claim for lien invalidity, we address it as part of her fifth and sixth issues.

12

As Defendants noted in their motion, because Foster is not a debtor under the note, she is not personally liable to pay the note. Only the Property was affected by Carlos's default on the note, and Foster agreed to the Property's use for that purpose. Foster appears to argue, however, that enforcing the deed of trust against the Property is the same as making her personally liable for the note. To that end, she quotes *Daughters of Charity Health Services of Waco v. Linnstaedter*, stating that "a lien against such property is necessarily a claim against its owner." 226 S.W.3d 409, 411 (Tex. 2007). That case addressed the validity of hospital liens involving worker's compensation patients and resolved an apparent conflict between a Property Code provision giving hospitals a lien to secure their fees and the Labor Code's prohibition of liens against compensation patients. *Id.*

*Linnstaedter* did not, however, address deeds of trusts securing purchase money or refinance transactions or do away with the distinction between the remedies of foreclosure and personal judgments against debtors.[13] *See Ditech Servicing, LLC v. Perez*, No. 13-17-00123-CV, 2018 WL 4171358, at *4 (Tex. App.—Corpus Christi–Edinburg

---

[13]Many of the cases cited by Foster in her brief are taken out of context or otherwise cited for propositions that they do not support. For example, Foster quoted *Hemyari v. Stephens* to argue that a mistake in a deed of trust that is obvious on its face makes the instrument (and a foreclosure sale conducted under it) invalid. In fact, *Stephens* held the opposite: the court held that the mistake in the deed of trust was so obvious as to be harmless and that a mistake makes a deed of trust and foreclosure sale invalid only when there is no way of discovering the mistake from the instrument's face. 355 S.W.3d 623, 628 (Tex. 2011).

Aug. 31, 2018, pet. denied) (mem. op.) (citing *Linnstaedter* and discussing the remedies of foreclosure and personal judgments); *Aguero v. Ramirez*, 70 S.W.3d 372, 374 (Tex. App.—Corpus Christi–Edinburg 2002, pet. denied) (stating that note and lien constitute separate obligations). Thus, even if the statute of frauds prevents Defendants from holding Foster personally liable on the note—something they have not tried to do—the trial court did not err by granting summary judgment on her claim to have the lien declared invalid. We overrule the remainder of Foster's fifth issue and her sixth issue.

### 2. Lack of notice of default or of intent to accelerate

We next turn to Foster's arguments relating to whether Defendants were required to send her notice of default and of intent to accelerate. Foster's arguments are primarily based on the notices required by Subsections (b) and (d) of Property Code Section 51.002. Subsection (b) stipulates that before a foreclosure sale, each debtor who is obligated to pay the debt must be given notice of the sale:

> (b) . . . [N]otice of the sale, which must include a statement of the earliest time at which the sale will begin, must be given at least 21 days before the date of the sale by:
>
> . . . .
>
> (3) serving written notice of the sale by certified mail on each debtor who, according to the records of the mortgage servicer of the debt, is obligated to pay the debt.

Tex. Prop. Code Ann. § 51.002(b)(3). Subsection (d) concerns notice of default and provides that before sending the foreclosure notice under Subsection (b), the mortgage servicer must first send a notice of default to "a debtor in default under a deed of trust":

> (d) Notwithstanding any agreement to the contrary, the mortgage servicer of the debt shall serve a debtor in default under a deed of trust or other contract lien on real property used as the debtor's residence with written notice by certified mail stating that the debtor is in default under the deed of trust or other contract lien and giving the debtor at least 20 days to cure the default before notice of sale can be given under Subsection (b). . . .

*Id.* § 51.002(d).

Aside from the statutory default notice, Texas common law also requires notice of intent to exercise a deed of trust's option to accelerate the debt. *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 566 (Tex. 2001). The purpose of this notice is to give the debtor an opportunity to cure the default and prevent acceleration. *Ogden v. Gibraltar Sav. Ass'n*, 640 S.W.2d 232, 234 (Tex. 1982); *Lockwood v. Lisby*, 476 S.W.2d 871, 873 (Tex. Civ. App.—Fort Worth 1972, writ ref'd n.r.e.). Thus, under both the common law and Section 51.002(d), the debtor must be told of the default and given an opportunity to cure to avoid foreclosure.[14] *Amos v. Ferretti*, No. 03-03-00274-CV,

---

[14]Before the operative facts of this case, Subsection (d) also applied to the notice of intent to accelerate, providing that "[t]he debtor must be given at least 20 days to cure the default *before the entire debt is due* and notice of sale is given." *Newman v. Woodhaven Nat'l Bank, Inc.*, 762 S.W.2d 374, 375 (Tex. App.—Fort Worth 1988, no writ) (emphasis added) (quoting Subsection (d) as then in effect). That "before the entire debt is due" language was deleted from Subsection (d) in 1993. Act of April 15, 1993, 73rd Leg., R.S., ch. 48, § 5, 1993 Tex. Gen. Laws 97, 99.

15

2005 WL 1489651, at *9 (Tex. App.—Austin June 23, 2005, no pet.) (mem. op.); *see also* *Juarez v. Wells Fargo Bank, N.A.*, No. SA-19-CV-01081-XR, 2020 WL 5709258, at *5 (W.D. Tex. Sept. 23, 2020) (order).

Foster's petition alleged that Defendants failed to provide her with notice of default under Section 51.002(d) or notice of intent to accelerate. As traditional summary judgment grounds, Defendants asserted that, because Foster did not sign the note and was not obligated to pay the debt, she was not entitled to either notice. On appeal, Foster's first three issues all complain about the lack of notice of default, and her third issue raises the lack of notice of intent to accelerate.

### (a) Notice of intent to accelerate and of default

Although Foster mentions acceleration in her issue, her brief's arguments focus on the failure to provide the Property Code default notice. The only authority Foster cites in her brief to support her entitlement to notice of intent to accelerate is *Ogden*, a case involving a property owner who signed both the promissory note and the deed of trust. 640 S.W.2d at 233. Foster cites no authority in her brief that supports the proposition that she, a person who is not a debtor under the note and who has no obligation to repay it, was entitled to notice that the note would be accelerated. *See* Tex. R. App. P. 38.1(i). Because this part of her third issue presents nothing for our review, we do not address it. *See In Interest of C.R.A.*, 453 S.W.3d 623, 633 (Tex. App.—Fort Worth 2014, no pet.).

As for the statutory default notice, Section 51.002(d) requires the notice for "a debtor in default under a deed of trust." Tex. Prop. Code Ann. § 51.002(d). Further, under Subsection (e), "[s]ervice of a notice under [Section 51.002] by certified mail is complete when the notice is deposited in the United States mail, postage prepaid and addressed to the debtor at the debtor's last known address." *Id.* § 51.002(e). As Defendants pointed out in their summary judgment motion—and as Foster acknowledges—she did not sign the note and is not obligated to pay it. If Foster is not a "debtor" and has no obligation to pay the note, she cannot be a "debtor in default" under Subsection (d).

Foster points to the "under a deed of trust" language of Subsection (d) and argues that, because she signed the deed of trust, she falls within the category of persons to whom Subsection (d)'s notice is owed. The person owed notice under Subsection (d) is "a debtor in default under a deed of trust or other contract lien on real property used as the debtor's residence." *Id.* The subsection is intended to provide an extra notice requirement that applies only when the collateral provided by the debtor is the debtor's residence. *See id.*; *see also, e.g.*, *Parker v. Frost Nat'l Bank of San Antonio*, 852 S.W.2d 741, 745 (Tex. App.—Austin 1993, writ dism'd) (holding debtor not entitled to notice under Subsection (d) because property in question was not debtor's residence). It does not, however, make the word "debtor" as used in Section 51.002 mean something other than one who owes a debt.

17

Our interpretation is buttressed by the language that the legislature chose not to use. Elsewhere in Chapter 51, the legislature used the term "mortgagor." Tex. Prop. Code Ann. §§ 51.0001(5) (defining the term as "the grantor of a security instrument"), .007. This term, which identifies a person in relation to a security instrument, does not appear in Section 51.002. Instead, Section 51.002 uses "debtor," which identifies a person in relation to a debt. The legislature's use of "mortgagor" elsewhere in the chapter indicates that if the legislature had intended to require notice of default to someone other than a person who owes a secured debt, it knew how to use a term other than "debtor." *Cf. In re Lee*, 411 S.W.3d 445, 454 (Tex. 2013) (stating that the legislature had instructed courts to consider child's best interest when deciding enforcement of arbitration award in suit affecting the parent-child relationship, and thus, if the legislature had wanted courts to consider best interest in enforcement of mediated settlement agreements, "it certainly knew how to do so"). We further note that even though a foreclosure affects anyone with an ownership interest in the foreclosed property, by Chapter 51's plain language, the only party entitled to notice of the foreclosure sale is the party who "is obligated to pay the debt," which Foster is not, by her own admission. *Id.* §§ 51.002(b), 51.016(c).

The deed of trust defined "borrower" to mean Carlos, and when Foster signed that instrument, she acknowledged that she was "not personally obligated to pay" the debt being secured. She thus could not be either a "debtor" or "in default" for purposes of Section 51.002, and she cites no authority that supports her argument. We overrule

18

this part of Foster's first, second, and third issues. *See, e.g.*, *Robinson v. Wells Fargo Bank, N.A.*, 576 Fed. App'x 358, 361 (5th Cir. 2014) (holding spouse who signed a deed of trust but not the underlying note was not a "debtor in default" for purposes of Property Code Section 51.002(d)); *Pantoja v. JPMorgan Chase Bank, N.A.*, No. CV H-19-3442, 2019 WL 5424649, at *3 (S.D. Tex. Oct. 23, 2019) (holding that under Subsection(d), "debtor" who must be provided notice is the borrower on the note and that spouse who signs deed of trust but not the note "is not a 'borrower' or 'debtor' entitled to notice under the statute"); *Lawry v. Bank of New York Mellon Tr. Co., N.A.*, No. 4:19-CV-111-A, 2019 WL 2150204, at *3 (N.D. Tex. May 16, 2019), *aff'd*, 797 Fed. App'x 152 (5th Cir. 2019); *cf. Larsen v. OneWest Bank, FSB*, No. 14-14-00485-CV, 2015 WL 6768722, at *8 (Tex. App.—Houston [14th Dist.] Nov. 5, 2015, no pet.) (mem. op.) (holding that wife consented to waiver of homestead rights to property she shared with her husband, who obtained a reverse mortgage).

Foster further argues that due process required Defendants to provide her with the notice to which she was entitled under the plain meaning of Section 51.002(d). Because Defendants were not required to send her notice, we overrule this argument.

### (b)  Miscellaneous related arguments

In her third issue, Foster asks whether the trial court abused its discretion by granting Defendants' summary judgment motion "when the plain meaning of" Texas Family Code Section 5.001 and Texas Business and Commerce Code Sections 26.01 and 26.02(b) "require the joinder of both spouses on both the promissory note

and the deed of trust in order that both spouses under the deed of trust receive the notice of default, with opportunity to cure and intent to accelerate, required by Tex. Prop. Code § 51.002(d)."

Foster did not assert a cause of action under any of these statutes. Rather, she cited these provisions as support for her argument that the Texas Constitution and the Property Code required her signature on the note before the deed of trust could be enforceable against her. To the extent that she did base a claim on these statutes, this part of her issue is without merit.

Under Family Code Section 5.001, "neither spouse may . . . encumber the homestead without the joinder of the other spouse except as provided in this chapter or by other rules of law." Tex. Fam. Code Ann. § 5.001. Foster does not explain how this section helps her argument when she acknowledges that she agreed to the lien of which she now complains.

Business and Commerce Code Section 26.01 is a statute of frauds and provides that certain agreements must be in writing and signed by the person charged with the agreement. Tex. Bus. & Comm. Code Ann. § 26.01(a). To the extent Foster uses this section to argue that she cannot be held personally liable on the note because she did not sign it, as stated above, Defendants do not seek to enforce the note against her. Similarly, Business Code Section 26.02 states that a loan agreement must be in writing, and subsection (b) provides that an agreement for a loan exceeding $50,000 "is not enforceable unless the agreement is in writing and signed by the party to be bound or

20

by that party's authorized representative." *Id.* § 26.02. The term "loan agreement" is defined to mean "one or more . . . promissory notes, . . . deeds of trust[,] or other documents, . . . pursuant to which a financial institution loans . . . money. . . ." *Id.* Foster does not contest that the note was reduced to writing and signed by Carlos—the person bound by the agreement—and, again, she acknowledges that she signed the deed of trust. Thus, her Business and Commerce Code arguments fail.

We overrule the remainder of Foster's first, second, and third issues.

### 3. Severance

Although none of Foster's issues expressly mention severance, her brief includes a section complaining about the severance of her claims against Defendants from the rest of her suit. We treat severance as a subsidiary issue fairly included by her statement of issues. *See* Tex. R. App. P. 38.1(f). We review the trial court's severance for an abuse of discretion. *Guar. Fed. Sav. Bank v. Horseshoe Operating Co.*, 793 S.W.2d 652, 658 (Tex. 1990).

Foster first argues that Civil Procedure Rule 41 does not permit a trial court to sever a case after it has been submitted to the trier of fact, that summary judgment is a trial to a trier of fact, and that severance was therefore erroneous. *See* Tex. R. Civ. P. 41. Rule 41 does not support Foster's argument. Foster is correct that a trial court should not grant a motion to sever after a jury verdict. *Lousteau v. Noriega*, No. 01-15-00254-CV, 2016 WL 4537371, at *5 (Tex. App.—Houston [1st Dist.] Aug. 30, 2016, pet. denied) (mem. op.). But "[i]n a case with multiple defendants, if summary judgment

21

is properly granted in favor of one defendant, it is generally proper to sever the claim against that defendant" in order to expedite appellate review. *Nicholson v. Stockman*, No. 02-19-00103-CV, 2020 WL 241420, at *2 (Tex. App.—Fort Worth Jan. 16, 2020, pet. denied) (mem. op.).

Foster further argues that her claims against Defendants were not severable because the severed claims were "so interwoven with the remaining action that they involve[d] the same facts and issues." *See State Dep't of Highways & Pub. Transp. v. Cotner*, 845 S.W.2d 818, 819 (Tex. 1993) (discussing when severance is proper). She contends that the facts of her claims "center on the interwoven actions of [the law firm defendant] filing a void [f]oreclosure sale deed after receiving written notice . . . to verify [Foster's] lack of liability for the debt . . . that [the law firm defendant] sought to collect on behalf of [Defendants]." Other than telling us that Defendants "conspired with their foreclosure counsel . . . and [her husband Carlos] to collect the debt by selling [Foster]'s family homestead when each party knew that [she] had not been given notice of default . . . ," Foster does not explain what issues in her claims against Defendants relating to the lien's validity and her rights to notice under the Property Code are also involved in her claims against the law firm defendant. *See* Tex. R. App. P. 38.1(i). To the extent that Foster contends that she pled a conspiracy claim against Defendants that was based on the same facts as a conspiracy claim against the law firm defendant, she has not appealed the summary judgment for Defendants as to that claim. We therefore

22

must affirm summary judgment as to that claim. *See Little v. Delta Steel, Inc.*, 409 S.W.3d 704, 722–23 (Tex. App.—Fort Worth 2013, no pet.).

None of Foster's arguments persuade us that the trial court abused its discretion in severing the claims against Defendants. We therefore overrule the part of her issues challenging the severance.

### 4.     Miscellaneous arguments

Foster appears to argue in her brief that Defendants sought foreclosure after the limitations period had run. From her pleadings and motions in the trial court, we could not discern any limitations argument raised by Foster until after the trial court had already granted summary judgment. We overrule this argument. *See* Tex. R. App. P. 33.1; Tex. R. Civ. P. 94; *Miller v. Maplewood Square Council of Co-Owners*, No. 01-18-00914-CV, 2020 WL 3422290, at *3 (Tex. App.—Houston [1st Dist.] June 23, 2020, pet. denied) (mem. op.).

Foster also appears to argue that Defendants lost the right to foreclose because the prior federal suit did not expressly give them the right to a non-judicial foreclosure. The case she cites for this proposition, *Vance v. Wilson*, is inapplicable. 382 S.W.2d 107, 110 (Tex. 1964). In that case, Wilson sued to foreclose on several deeds of trust and to recover a money judgment, but the judgment awarded damages without mentioning foreclosure. *Id.* at 109–10. Her right to foreclose having already been adjudicated against her, Wilson could not later foreclose on the liens. *Id.* No such situation exists here. We reject Foster's argument.

## III. Conclusion

Having sustained Foster's issues challenging the no-evidence summary judgment, and having overruled the remainder of her six issues, we affirm the trial court's judgment.

/s/ Mike Wallach
Mike Wallach
Justice

Delivered:  October 14, 2021