

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-12-00498-CV

IN THE INTEREST OF C.R.A. AND
S.A.A.

----------

FROM THE 355TH DISTRICT COURT OF HOOD COUNTY
TRIAL COURT NO. D2011230

----------

## OPINION

----------

Appellant Amy Anderson Cain (Mother) appeals the trial court's order giving her the exclusive right to designate the residence of her children (C.R.A. and S.A.A.) but restricting her right geographically to Hood County, where the children's father, Appellee Nicholas Anderson (Father), lives. In three issues, Mother contends (1) Father's petition seeking a geographical restriction to Mother's right to designate the children's residence brought this proceeding

within the ambit of section 156.102 of the Texas Family Code, (2) Father's affidavit in support of his petition was insufficient under section 156.102 and, therefore, the trial court erred by proceeding to a hearing on his petition, and (3) the trial court's findings of fact are not supported by sufficient evidence. We hold section 156.102 does not apply to Father's proceeding and the evidence was sufficient to support the trial court's findings of fact and, therefore, affirm.

## Preliminary Discussion

Mother's arguments derive from the requirement under the Texas Family Code that the divorce decree must designate one parent as having the exclusive right to determine a child's primary residence. Thereafter, Mother's arguments are based upon the requirements under the Texas Family Code for modifying such a designation within one year of the trial court's rendition of the designation. We present those Texas statutory requirements initially because they are the prism through which both Mother's arguments and Father's responses are best understood.

## Texas's Designation of a Parent Having the Exclusive Right to Determine a Child's Primary Residence

The Texas Family Code requires a divorce decree to designate one parent as having the exclusive right to determine a child's primary residence. Section 153.134 is the source of that requirement. In relevant part, it provides:

> (b) In rendering an order appointing joint managing conservators, the court shall:

(1) designate the conservator who has the exclusive right to determine the primary residence of the child and:

> (A) establish, until modified by further order, a geographic area within which the conservator shall maintain the child's primary residence; or

> (B) specify that the conservator may determine the child's primary residence without regard to geographic location; . . . .

Tex. Fam. Code Ann. § 153.134(b)(1)(A), (B) (West 2014).

## Modification within One Year of the Designation of a Parent Having the Exclusive Right to Determine a Child's Primary Residence

Should a party want to modify such a designation within one year of the trial court's rendition of the designation, the Texas Family Code sets out specific requirements that the petitioner must meet before such a modification can take place. The requirements are set out in section 156.102 of the Texas Family Code, which provides:

> (a) If a suit seeking to modify the designation of the person having the exclusive right to designate the primary residence of a child is filed not later than one year after the earlier of the date of the rendition of the order or the date of the signing of a mediated or collaborative law settlement agreement on which the order is based, the person filing the suit shall execute and attach an affidavit as provided by Subsection (b).

> (b) The affidavit must contain, along with supporting facts, at least one of the following allegations:

> > (1) that the child's present environment may endanger the child's physical health or significantly impair the child's emotional development;

> > (2) that the person who has the exclusive right to designate the primary residence of the child is the person seeking or consenting

3

to the modification and the modification is in the best interest of the child; or

(3) that the person who has the exclusive right to designate the primary residence of the child has voluntarily relinquished the primary care and possession of the child for at least six months and the modification is in the best interest of the child.

(c) The court shall deny the relief sought and refuse to schedule a hearing for modification under this section unless the court determines, on the basis of the affidavit, that facts adequate to support an allegation listed in Subsection (b) are stated in the affidavit. If the court determines that the facts stated are adequate to support an allegation, the court shall set a time and place for the hearing.

*Id.* § 156.102 (West 2014).

## Factual and Procedural Background

Father was raised in Granbury, Hood County, Texas. Father went to the Air Force Academy and was thereafter based in Massachusetts, where Father and Mother met and got married. While in Massachusetts they had two children: a son, C.R.A., and a daughter, S.A.A.

After Father left active duty, the family moved to North Carolina where the family lived for about three-and-a-half years before Father was laid off. The family then moved to Georgia because Father thought he had a job lined up there, but the job fell through. After about two months, in May 2010, Mother had moved out to live with Stephen Cain, so Father broke his lease, left Georgia, and returned to Hood County, Texas, to live with his parents while Mother and the children remained in Georgia. Father returned to Georgia in June 2010 and took the children back with him to Texas without Mother's knowledge. Father's

4

understanding was that Mother and Stephen Cain had since separated, that Mother's relationship with Stephen Cain was off and on, and that Mother was unemployed. Father explained that neither he nor Mother had any income other than unemployment, that he could not provide for himself, and that in Texas he had a free place to live. For her part, Mother denied Stephen Cain lived with her but maintained he merely stayed with her for two weeks in Georgia before he returned to North Carolina where he worked.

Mother, who had reservations about getting divorced in Texas, filed for divorce in Georgia. On August 3, 2010, however, the Georgia court declined to move the children from Texas, awarded Father temporary primary custody, and gave Mother visitation rights. After the Georgia court awarded Father temporary primary custody, Mother moved to Texas around August, September, or October 2010, to be with the children. Once in Texas, the children resided primarily with Mother while Father exercised visitation rights.

Meanwhile, although neither Father nor Mother lived in Georgia, Mother's divorce proceeding in Georgia proceeded to final judgment. In a document captioned "Final Judgment and Decree of Divorce and Incorporation of Arbitration Award" and file-marked August 18, 2011, the trial court awarded "joint legal custody" of the children to both Father and Mother. Specifically, the order provides:

> Both parents shall share joint legal custody of their Minor Children. Joint Legal Custody shall include all those rights encompassed in the Official Code of Georgia including but not

5

necessarily limited to the following. The parties shall consult with each other on all major decisions pertaining to the education, health care, religious training and upbringing of the minor Children of the parties with a view towards arriving at a harmonious policy calculated to promote the Children's best interest. If either of the parties shall have knowledge of any illness, accident or other matter seriously affecting the well-being of the Children, he or she, as the case may be, shall promptly notify the other by the quickest means and, except in an emergency, shall not take any action without consulting the other. In the event the parties cannot agree on said major decisions, then the Mother shall have the final authority to make said decisions with regard to the educational, non-emergency healthcare, religious upbringing, and extracurricular decisions for the children. However neither the Mother nor the Father shall be bound to take the children to any event on their parenting time.

The order provides: "The Mother shall have primary physical custody of the [Children] subject to the Father's parenting time rights." It further provides: "The children shall remain in the schools in which they are currently attending through the end of the 2010-2011 school year. Further, the children shall be enrolled and attend school in the school district in which they currently reside through the end of the 2011-2012 school year." Finally, it provides: "Each party must give the other party advance notice of at least thirty (30) days of that party's intention to relocate residence, and to provide the new address and telephone number as soon as that is determined."

On September 3, 2011, approximately two weeks after the final decree was filed, Mother married Stephen Cain and maintained a long distance relationship with him. In February 2012, Mother informed Father she wanted to leave Texas and take the children with her. Thereafter, in Texas, Father filed a "Petition to Modify Parent-Child Relationship" on April 9, 2012. Father sought to

6

be appointed as the person who had to right to designate the primary residence of the children. In the alternative, Father wanted the children's residence restricted to Hood County, Texas. There was no supporting affidavit.

On April 17, 2012, Mother filed a "Motion to Deny Relief in Suit to Modify Parent-Child Relationship." Mother stated:

> 1. The suit to modify was filed to modify the designation of the person having the exclusive right to designate the primary residence of the children and was filed within one year after the rendition of the order to be modified.
>
> 2. Neither the petition nor any attachments provide the Court with adequate facts to support (a) an allegation that the children's present environment may endanger their physical health or significantly impair their emotional development; (b) the allegations that the person who has the exclusive right to designate the primary residence of the children is seeking the modification or consents to the modification and that the modification is in the best interest of the children; or (c) the allegations that the person who has the exclusive right to designate the primary residence of the children has voluntarily relinquished the primary care and possession of the children to another person for at least six months and that the modification is in the best interest of the children.

Although Mother did not cite section 156.102 of the Texas Family Code in her motion, Mother tracked the language of section 156.102 and is clearly relying on it. Handwritten notations show Mother's motion was heard on April 19 and 25, 2012, and denied on April 25, 2012. The trial judge signed a formal order on May 14, 2012, denying Mother's motion to dismiss.

On April 24, 2012, Father filed his "First Amended Petition to Modify a Prior Order Affecting the Parent-Child Relationship." Father requested the same relief as in his original petition. However, he added: "The prior order fails to appoint

7

any person with the right to designate the primary residence of the children. Therefore, such an order is not in compliance with the Texas Family Code." Additionally, Father added: "An Affidavit, attached hereto, in compliance with 156.102 of the Texas Family Code, contains facts and allegations that would support a finding that the present environment of the children may significantly impair their emotional development."

After a May 9, 2012 hearing on Father's application for temporary orders, the trial court made Father and Mother temporary joint managing conservators. Mother was given the exclusive right to designate the primary residence of the children within Hood County, Texas.

Meanwhile, Mother, who had taken the position that, under the Georgia order, she was free to leave with the children after the end of the 2011-2012 school year, stated at the May 9, 2012 hearing that she had quit her job in Texas. Subsequently, at the final trial in August 2012, Mother said she was unemployed, said she had spent the summer with Stephen Cain and his parents in North Carolina, and said she was seeking employment in North Carolina. Mother said if the trial court ruled against her, she would return to Texas, and Stephen Cain would eventually have to move to Texas as well.

After a bench trial on August 16, 2012, the trial court named Father and Mother joint managing conservators of the children. Mother was given the exclusive right to designate the primary residence of the children within Hood County, Texas.

Mother filed a request for findings of fact and conclusions of law on September 12, 2012. In the trial court's October 3, 2012 "Findings of Fact and Conclusions of Law," the trial court found that the Georgia order failed to grant either parent the right to establish the primary residence of the children and did not comply with the requirements of section 153.134 of the Texas Family Code requiring one parent be granted the exclusive right to establish the residence of the children. The trial court found that because the Georgia order was not in compliance with the Texas Family Code, Father's proceeding was not "a suit seeking to change the conservator with the primary right to establish residency" but was instead a proceeding requesting the Georgia order be brought into compliance with the Texas Family Code by designating one conservator with that right. Because section 156.102 applied only to cases seeking to change a previous designation of the person with the exclusive right to designate the primary residence of the children, the trial court found it was inapplicable to Father's proceeding because Father was seeking the designation of one parent in the first instance. The trial court found that the Georgia order restricted the children's primary residence to Hood County, Texas, through the end of the school year but failed to designate a geographic restriction after that date, that Mother had notified Father of her intention to remove the children from the geographical restricted area at the end of the school year in May 2012, that there had been a material change of circumstances, that the Georgia order had become unworkable, and that it was in the children's best interest to modify the

9

order. The trial court found it was in the children's best interest to appoint Father and Mother as joint managing conservators and to designate Mother as having the right to designate the children's primary residence within Hood County, Texas. The trial court made the same conclusion of law making Father and Mother joint managing conservators and designating Mother as having the right to designate the children's primary residence within Hood County, Texas.

Mother filed a motion for new trial on October 2, 2012. Mother attacked the legal and factual sufficiency of the evidence. The trial court heard Mother's motion for new trial on November 16, 2012, and signed an order denying it on December 3, 2012.

### Whether Section 156.102(c) Applies

We address Mother's second issue first because it addresses the applicability of section 156.102 generally, whereas her first issue addresses a more technical application of section 156.102 that is better understood after establishing the general parameters of section 156.102. In Mother's second issue, she contends the trial court erred by proceeding to a hearing on Father's petition "when the requisite affidavit attached by [Father] fell drastically short of the burden of proof set forth in section 156.102." This is a straightforward application of section 156.102(c). Tex. Fam. Code Ann. § 156.102(c).

Relying on *In re R.C.S.*, 167 S.W.3d 145 (Tex. App.—Dallas 2005, pet. denied), *cert. denied*, 547 U.S. 1055 (2006), Father responds that section 156.102 does not apply because the Georgia order does not designate the

person having the exclusive right to designate the primary residence of the children. For the reasons given below, we agree with Father that the Georgia order does not comply with section 153.134(b)(1) of the Texas Family Code and, therefore, section 156.102 was inapplicable.

In *R.C.S.*, the father and mother were made joint managing conservators but neither parent was granted the right to establish the primary residence of the children. *Id.* at 147. Instead, the decree provided that the primary residence of the children was at two locations. *Id.* Three months later, the mother filed a petition to modify the parent-child relationship because she wanted to move to another city along with the children so that she could take care of the children's maternal grandmother, who had fallen very ill. *Id.* The mother wanted to be designated as the conservator with the exclusive right to determine the primary residence of the children without regard to geographical location or, in the alternative, with a restriction to Wise County or contiguous counties. *Id.* The jury awarded the mother the latter relief. *Id.* at 148. In his appeal, the father argued that the trial court lacked jurisdiction because the mother's supporting affidavit, as required under section 156.102(c) of the Texas Family Code, was insufficient. *Id.* The court of appeals disagreed. It stated:

> By its clear and unequivocal terms, section 156.102 is applicable only to suits seeking to "modify the designation of the person having the exclusive right to determine the primary residence of a child." . . . In this case, the decree of divorce appellee sought to modify did not designate a person with the exclusive right to determine the primary residence of the children. Instead, the decree designated two alternate locations as the primary residence of the children.

11

Because appellee's suit sought an order designating a person with the right to determine the primary residence of the children in the first instance, instead of a modification of the person so designated, section 156.102 does not apply to appellee's suit.

*Id.* In *Ellason v. Ellason*, the result was the same where the parents had the "joint right to establish the child's primary residence." 162 S.W.3d 883, 885 (Tex. App.—Dallas 2005, no pet.). Because section 156.102 did not apply, the absence of a supporting affidavit as required by section 156.102 was immaterial. *Id.* at 886.

In her brief, Mother concedes the Georgia court did not designate either parent as the parent with the right to designate primary residence; however, she asserts this was in accordance with Georgia law. Mother argues that *R.C.S.* is distinguishable because in that case Texas law was not complied with, whereas in this case, Georgia law was complied with. This argument is not persuasive. Regardless of the explanation, the question before the trial court was whether Father's suit was one to designate a person with the right to determine the primary residence of the children in the first instance or, in the alternative, a suit to modify a previous designation. Mother concedes there was not a previous designation. This necessarily places Father's suit as one in which he was seeking, in the first instance, a designation of a person with the right to determine the primary residence of the children.

Mother appears to argue that the Georgia court, by ordering that she had "primary physical custody" of the children, effectively designated her as the

12

custodian with the exclusive right to determine residence. We disagree. Mother does not show how having primary custody of a child corresponds to having the exclusive right to determine residence. The Georgia Code provides: "(b)(1) Unless otherwise ordered by the judge, a parenting plan shall include the following: . . . (C) A recognition that a parent with physical custody will make day-to-day decisions and emergency decisions while the child is residing with such parent; . . . ." Ga. Code Ann. § 19-9-1(b)(1)(C) (2011). Moving across the country is neither a day-to-day nor an emergency decision. Such a move is beyond the scope of authority of a parent having "primary physical custody." The Georgia divorce decree gives Mother the final authority when the parties disagreed on enumerated issues, such as education, non-emergency healthcare, religion, and extracurricular activity, but residency was not among those issues enumerated.

The Georgia order gives Mother primary custody of the children, but it does not give Mother the exclusive right to designate their residence. The Georgia order required the children to remain in their current school until the end of the 2011–2012 school year but thereafter gave no guidance whatsoever regarding Father's and Mother's respective rights. There is nothing in the Georgia order comparable to subsections (A) and (B) of section 153.134(b)(1) giving Father or Mother the unilateral right to determine the children's primary residence with or without regard to a geographic location after the 2011–2012 school year. Tex. Fam. Code Ann. § 153.134(b)(1)(A), (B). Father's suit, like the

13

mother's suit in *R.C.S.*, "sought an order designating a person with the right to determine the primary residence of the children in the first instance, instead of a modification of the person so designated." *R.C.S.*, 167 S.W.3d at 148. Because section 156.102 does not apply, any defect in Father's supporting affidavit is immaterial. Similarly, because section 156.102 does not apply, Mother's reliance on section 156.102(c) is misplaced. We overrule Mother's second issue.[1]

## Whether the Geographical Restriction Nevertheless Makes Section 156.102 Applicable

In Mother's first issue, she argues that Father's suit, to the extent it sought a very limited geographical restriction, was sufficient to place his suit within the ambit of section 156.102. *See In re A.S.M.*, 172 S.W.3d 710, 713–16 (Tex. App.—Fort Worth 2005, no pet.). Mother again argues that the trial court should have looked at Father's supporting affidavit, found it insufficient under section 156.102, and proceeded no further on Father's petition. Once again, Mother is arguing for a straightforward application of section 156.102(c) of the Texas Family Code. *See* Tex. Fam. Code Ann. § 156.102(c).

In *A.S.M.*, the mother had previously been designated as the parent with the exclusive right to determine the primary residence of the child, but the court imposed a geographic restriction. 172 S.W.3d at 712. Two months later, the mother filed a suit seeking to remove the geographic restriction, but the trial court

---

[1]The parties argue at length about the one-year requirement of subsection (a) of section 156.102. Because we hold section 156.102 is inapplicable, the one-year requirement of subsection (a) of section 156.102 is immaterial.

14

dismissed her suit because she failed to file a supporting affidavit as required by section 156.102. *Id.* at 712–13. The court of appeals held that suits to modify the restrictions fell within section 156.102's parameters and concluded the trial court did not err. *Id.* at 716.

*A.S.M.* is distinguishable. In *A.S.M.*, one parent had been designated as the person with the exclusive right to determine the primary residence of the child. *Id.* at 712. The dispute was over the geographic restriction attached to that right. *Id.* at 712–13. In Mother's case, no one is designated as the person with the exclusive right to determine the children's residence. Furthermore, the geographic restriction in Mother's case is not attached to anyone's exclusive right to determine the children's residence as contemplated by section 153.134(b). Additionally, the geographic restriction in the Georgia divorce decree expires with time, and after the expiration, the Georgia divorce decree is silent. Section 153.134(b)(1)(A) provides that any geographic restriction applies "until modified by further order." Tex. Fam. Code Ann. § 153.134(b)(1)(A). Subsection (A) does not contemplate a geographic restriction changing absent a court order. Finally, section 153.134(b)(1)(B) provides that if the trial court's intent is to not have a geographic restriction, the trial court must expressly state as much in its order. *Id.* § 153.134(b)(1)(B). The Georgia divorce decree does not expressly state Mother had the unilateral right to move the children anywhere she pleased after the 2011–2012 school year. Mother's reliance on *A.S.M.* is misplaced.

15

Father said that during the arbitration in Georgia, Mother represented that if she were awarded custody, she would stay in Texas. Father explained that at the time, Mother's relationship with Stephen Cain was off. Mother, however, said Father was not being truthful because Father knew at the arbitration meeting in Georgia that she wanted to leave Texas. Mother said the judge even said that after the 2011–2012 school year, she was free to go. Mother argues that the intent of the Georgia order was for her to move wherever she chose after the end of the 2011–2012 school year. She asserts Father acknowledged that was the intent of the Georgia decree. Father, however, simply acknowledged the geographic restriction in the Georgia decree expired at the end of the 2011–2012 school year. In any event, for the trial court's purposes, the only question was whether the Georgia decree complied with section 153.134. If it did, Father had to comply with section 156.102 when filing his petition in Texas. If it did not, Father did not have to comply with section 156.102. The answer to that is no, the Georgia decree did not comply with section 153.134. Section 153.134(b)(1)(A) does not permit a geographic restriction to simply expire with time but requires another order modifying the geographic restriction, and section 153.134(b)(1)(B) requires that the absence of a geographic restriction be expressly stated in the order. *Id.* § 153.134(b)(1)(A), (B). The Georgia decree does not comply with either subsection (A) or (B) of section 153.134(b)(1). We hold the geographic restriction in the Georgia decree did not pull Father's petition within the ambit of section 156.102 and, therefore, any defect in his affidavit was

16

immaterial. Because section 156.102 does not apply, the trial court properly disregarded section 156.102(c). We overrule Mother's first issue.

### Sufficiency of the Evidence

In Mother's third issue, she contends the evidence is insufficient to support few, if any, of the trial court's "conclusions." In her brief, however, she limits her attacks to only three "conclusions of law." Our review of the record shows she is attacking three of the trial court's findings of fact. She attacks findings twelve, thirteen, and fourteen, which provide:

> 12. There has been a material change in circumstances that [affect] the parties and/or children in this case since the entry of the last order.
>
> 13. The Final Judgment and Decree of Divorce and Incorporation of Arbitration Award out of the Superior Court of Cherokee County State of Georgia undated but file marked August 18, 2011 has become unworkable and it is in the best interest of the children that the order be modified.
>
> 14. The Court finds that the material allegations in the Amended Petition to Modify are true and that the requested modifications are in the best interest of the children to the extent ordered by the Court.

A brief must contain appropriate citations to authorities and to the record. *Sweed v. City of El Paso*, 195 S.W.3d 784, 786 (Tex. App.—El Paso 2006, no pet.) (citing Tex. R. App. P. 38.1(g), 38.1(h)). Brief conclusory statements unsupported by argument or citation to legal authorities present nothing for review. *Id.* Mother provides no references to the record. Mother cites no legal authority to support her contentions. Mother does not specify whether she is attacking the legal or factual sufficiency of the evidence to support these findings.

17

Mother's reply brief provides additional argument and references to the record. It is not clear, however, whether these arguments are directed at her sufficiency challenge. She still fails to cite any legal authority to support a sufficiency challenge. Accordingly, we overrule Mother's third issue as inadequately briefed.

In the alternative, because Mother twice argues there was "no proof whatsoever," we construe Mother's brief to raise a legal sufficiency challenge. Anything more than a scintilla of evidence is legally sufficient to support a finding. *Cont'l Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 450 (Tex. 1996); *Leitch v. Hornsby*, 935 S.W.2d 114, 118 (Tex. 1996). More than a scintilla of evidence exists if the evidence furnishes some reasonable basis for differing conclusions by reasonable minds about the existence of a vital fact. *Rocor Int'l, Inc. v. Nat'l Union Fire Ins. Co.*, 77 S.W.3d 253, 262 (Tex. 2002).

Mother does not specifically attack findings of fact ten, eleven, and sixteen, which provide:

> 10. The Georgia Order mandated the primary residence of the children to be Hood County, Texas from the date of the order through the end of the 2010-2011 [sic] school years but failed to designate any geographic restriction after that date.
>
> 11. [Mother] notified [Father] of her intent to remove the children from the geographically restricted area beginning when the children get [sic] out of school in May 2012.
>
> . . . .
>
> 16. It is in the best interest of the children that [Father] and [Mother] be appointed joint managing conservators of the children and that [Mother] have the right to designate the children's primary residence within Hood County, Texas.

Relocation can be the basis of changed circumstances. *Arredondo v. Betancourt*, 383 S.W.3d 730, 738–39 (Tex. App.—Houston [14th Dist.] 2012, no pet.); *Bates v. Tesar*, 81 S.W.3d 411, 429–32 (Tex. App.—El Paso 2002, no pet.). The El Paso Court of Appeals quoted the New Mexico Supreme Court for the following proposition:

> We do not hold that a proposed relocation constitutes a substantial and material change in circumstances as a matter of law, but it is difficult to imagine an instance in which a proposed relocation will not render an existing parenting plan or custody-and-visitation arrangement unworkable. As the court of appeals noted, 'a distant relocation by one parent will inevitably trigger a change of circumstances—the inability of the parties to implement their parenting agreement.'

*Bates*, 81 S.W.3d at 430 (quoting *Jaramillo v. Jaramillo*, 823 P.2d 299, 309 n.9 (N.M. 1991)). These findings support why there had been a material change of circumstances (finding 12), why the Georgia order had become unworkable and why a modification was necessary (finding 13), and why granting Father's requested relief was in the children's best interest (finding 14). Mother does not challenge any of them.

The public policy in Texas is to assure that the children have frequent and continuing contact with parents who have shown the ability to act in the best interest of the children; to provide a safe, stable, and nonviolent environment for the children; and to encourage parents to share in the rights and duties of raising their children after the parents have separated or dissolved their marriage. Tex. Fam. Code Ann. § 153.001(a)(1)–(3) (West 2014). Mother's plan was to move

the children to North Carolina where she had no job, where she would be financially dependent on her new husband and his parents, where she had no relatives of her own in the event there were problems in her new marriage, and where Father would necessarily be a remote and occasional visitor in the children's lives. In contrast, Father has a job that pays about $103,000 a year. Father's parents live next door to Father and have a very close relationship with the children. The children were doing well in school. And Mother acknowledged she would stay in Texas if the court ordered the children to remain in Texas. Despite Mother's exasperation with Father and his parents, Mother showed the ability to act in the children's best interest. The best interest of the children is always the primary consideration of the court when determining the issues of conservatorship, possession of, and access to the children. *Id.* § 153.002 (West 2014). Mother's desire to live with her new husband in North Carolina, although understandable, was not the primary consideration. We overrule Mother's third issue and affirm the trial court's judgment.

/s/ Anne Gardner
ANNE GARDNER
JUSTICE

PANEL: LIVINGSTON, C.J.; GARDNER and GABRIEL, JJ.

DELIVERED: December 31, 2014