

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-24-00240-CV

_____

DAPHNEE VERDELL HOSKIN, Appellant

V.

ANTHONY NATHANIAL HOSKIN, Appellee

On Appeal from the 467th District Court
Denton County, Texas
Trial Court No. 22-2014-467

Before Sudderth, C.J.; Bassel and Walker, JJ.
Memorandum Opinion by Justice Walker

## MEMORANDUM OPINION

## I.  INTRODUCTION

Appellant Daphnee Verdell Hoskin (Wife), proceeding pro se, appeals the trial court's final decree of divorce (final decree) from Appellee Anthony Nathanial Hoskin (Husband).[1]

Wife raises twenty-one issues, and for ease of discussion, we will consolidate her issues into three groups: (1) division of the marital estate, (2) attorney's fees, and (3) the final decree.  For several different reasons—lack of standing, failure to show an abuse of discretion, and inadequate briefing—we will affirm.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

Husband and Wife married in January 2015, and their marriage produced one child and a marital residence (the Residence).  By March 2022, the marriage had become insupportable, which led to Wife filing an original petition for divorce, and Husband counter petitioning for divorce.

During the suit, the trial court issued temporary orders that granted Wife certain conservatorship rights to the child, including the exclusive right of school enrollment  The trial court also issued a scheduling order that required Husband and

---

[1]Husband also proceeds pro se.

Wife to appear in person for trial. The trial was set for January 2024. Husband appeared for the trial, but Wife did not.[2]

Trial commenced without Wife,[3] and the trial court found that Wife had been provided notice of the proceeding and wholly made default. Husband testified that he and Wife purchased the Residence while they were married, but he did not believe that his name was on the mortgage. Among other things, Husband requested fifty percent equity of the Residence. At the conclusion of trial, the trial court orally pronounced its judgment, which granted the divorce, established conservatorship rights and duties as set out in the temporary orders, and awarded the Residence to Wife—subject to an award of fifty percent equity value (as of January 2024) to Husband. The trial court ordered that Husband would have a lien on the Residence for fifty percent of the Residence's equity until Wife paid Husband in full. The trial court did not sign a final decree on the day of trial, but instead, it tasked Husband with drafting the final decree.

Husband retained an attorney to draft the final decree, and his attorney filed a motion for clarification, explaining that Husband was unable to determine the equity

---

[2]Wife emailed the trial court the evening before the trial date and explained that she would not be present for trial because the child was sick and had a doctor's appointment. Wife did not file a motion for continuance, and she does not allege that she was prevented from doing so.

[3]When they filed their petitions for divorce, Husband and Wife were represented by attorneys, but by trial, they were both pro se.

3

of the Residence without the mortgage balance. Husband's attorney also brought to the trial court's attention that, based on the latest deed of trust that was filed on September 22, 2021, Husband was actually a listed borrower on the Residence's mortgage. Concerned that the trial court's oral rendition at the January trial may not have been specific enough, Husband's motion for clarification requested that the trial court order Wife to either refinance or sell the Residence to pay Husband's share of the awarded equity.

A few days later, an attorney representing Wife's mother (Gettis) filed a motion to vacate the trial court's oral rendition.[4] Gettis asserted that she also had an ownership and equity interest in the Residence and claimed that she was listed as a grantee on the general warranty deed with the vendor's lien. Specifically, Gettis argued that the trial court's oral rendition regarding the Residence improperly awarded the Residence entirely to Wife, divesting Gettis of her ownership and equity interests. Gettis complained that the ruling should be vacated because it impermissibly deprived her of due process and property rights.

In February 2024, Husband and Wife appeared for a hearing on Husband's motion for clarification.[5] Gettis did not appear. Wife attempted to raise Gettis's motion to vacate, but the trial court stated that the only motion before it at the

---

[4]Gettis did not file a motion to intervene.

[5]Husband was represented by an attorney, and Wife appeared pro se.

4

hearing was Husband's motion for clarification. At the conclusion of the hearing, the trial court ordered Wife to provide Husband with the Residence's January 2024 mortgage statement.

A short time later, Wife filed a motion for new trial.[6] Wife's motion argued that the trial court had abused its discretion in its oral rendition at the January trial because the trial court lacked authority to award the Residence to Wife and divest Gettis of her interest in the property.

In March 2024, Husband and Wife appeared for a hearing on the trial court's final decree.[7] Wife made various objections before the trial court signed the final decree. Specifically, on the basis of Gettis's alleged interest in the property, Wife objected to the award of the Residence and complained of the equity amount awarded to Husband. Wife questioned where the "amount came from," and Husband explained that the awarded amount was determined from the county appraisal district (CAD) value minus the January 2024 mortgage statement divided by two. The trial court overruled Wife's objection, and subject to the refinancing or sale of the marital residence, it awarded $145,350.81 to Husband for his share of the Residence's equity and awarded the Residence to Wife. Husband's attorney then requested attorney's

---

[6]Wife's motion for new trial was filed by the same attorney who also filed Gettis's motion to vacate. Both motions raised many of the same arguments and authority. Gettis did not file any subsequent motions. When Wife filed her motion for new trial, the final decree still had not yet been signed.

[7]Husband was represented by an attorney, and Wife was again pro se.

5

fees for communication and various requests that she had received from Wife's attorney.[8]  The trial court granted the request and ordered Wife to pay $900 for attorney's fees[9] and signed the final decree at the hearing.  Wife requested findings of fact and conclusions of law, which the trial court subsequently filed.

After the final decree was signed, Wife filed a first amended motion for new trial.  Wife maintained that the final decree failed to conform with the trial court's oral rendition at the January trial and complained that Gettis was divested of her interest in the Residence.[10]  Wife's motion identified two inconsistencies between the oral rendition at trial and the final decree.

First, she contended that the oral rendition at the January 2024 trial contained no provisions for the refinancing or sale of the Residence, yet the final decree included a provision that ordered her to refinance it within sixty days or list it for sale and that Husband would receive $145,350.81 from the refinancing or sale.  Second,

---

[8]Between the clarification hearing and the final decree hearing, Wife's attorney reached out to Husband's attorney approximately fourteen times and requested additional information and conferencing.  However, by the final decree hearing, Wife was pro se.  In response to Husband's attorney's request for attorney's fees, Wife objected that she was no longer represented by an attorney and that she should not have to pay for her attorney reaching out to opposing counsel.

[9]Husband's attorney testified that she charged $300 an hour and incurred three hours of billable work.

[10]Wife claimed that Gettis owned a seventy-five percent interest in the Residence and that Husband and Wife collectively owned a twenty-five percent interest.

she maintained that the January 2024 oral rendition established that her conservatorship "[r]ights and duties [to the child] shall be as set out in the temporary orders." The temporary orders provided that Wife shall "have the exclusive right to enroll the child in school;" however, the final decree did not include such a provision.

In April 2024, Husband and Wife again appeared—both represented by counsel—for a hearing on Wife's first amended motion for new trial. At this hearing, Wife contended that because Gettis was a third-party owner, the final decree erroneously awarded the Residence at fifty percent to Wife and fifty percent to Husband. In response, Husband argued that Wife had failed to bring that matter to the trial court's attention during the pendency of the suit, and he maintained that in order to be granted a new trial, Wife had to plead the *Craddock* factors,[11] which he asserted that she failed to plead. The trial court asked Wife's attorney—who filed Wife's first amended motion for new trial as well as Gettis's earlier motion to vacate—if he represented Gettis, but he explained that Gettis had recently passed away and that her estate would be represented by different counsel. Wife's attorney further confirmed that there was no pending motion on behalf of Gettis or her estate before the trial court at the new trial hearing. After reviewing Wife's motion for new trial, the trial court found that the *Craddock* factors had not been pleaded or provided

---

[11]*See Craddock v. Sunshine Bus Lines, Inc.*, 133 S.W.2d 124, 126 (Tex. 1939) (establishing three prong test a defaulting party must satisfy before a trial court must set aside a default judgment).

for in her motion, and it denied Wife's first amended motion for new trial. This appeal followed.

## III. DISCUSSION

Wife raises twenty-one issues—each alleging that the trial court abused its discretion. We have consolidated these issues into three groups.

The first group concerns the trial court's division of the marital estate and consists of issues one through seven, nine through thirteen, and seventeen. The second group complains of the award of attorney's fees and consists of issues fifteen and sixteen. The third group has two parts that (1) highlights inconsistences between the trial court's oral rendition and its final decree in issues eight and fourteen and (2) challenges the trial court's findings of fact and conclusions of law issues in eighteen through twenty-one. For a variety of reasons more thoroughly set out below, we overrule all twenty-one issues.

### A. DIVISION OF THE MARITAL ESTATE

In this first group of issues—one through seven, nine through thirteen, and seventeen—Wife contends that the trial court abused its discretion in its division of the marital estate, namely the Residence. For most of these issues, Wife lacks standing to complain, and for the rest, she fails to show that the trial court abused its discretion.

8

### 1. Standard of Review and Applicable Law

In dividing a marital estate, the trial court is to do so in a manner that it deems "just and right, having due regard for the rights of each party." Tex. Fam. Code Ann. § 7.001; *Watson v. Watson*, 286 S.W.3d 519, 522 (Tex. App.—Fort Worth 2009, no pet.). But a property division need not be equal to satisfy the just-and-right standard. *See In re Marriage of Mozley*, No. 06-16-00004-CV, 2016 WL 4256926, at *3 (Tex. App.—Texarkana Aug. 12, 2016, no pet.) (mem. op.).

"Because the standards for dividing a community estate involve the exercise of sound judgment, a trial court must be accorded much discretion in its decision." *Bradshaw v. Bradshaw*, 555 S.W.3d 539, 543 (Tex. 2018). "The division 'should be corrected on appeal only where an abuse of discretion is shown in that the disposition made of some property is manifestly unjust and unfair.'" *Id.* (quoting *Hedtke v. Hedtke*, 248 S.W. 21, 23 (Tex. 1923)). "The appellate court cannot merely reweigh the evidence." *Id.* "Accordingly, we will reverse the trial court's judgment only where it 'clearly abused its discretion and if the error materially affects the court's just and right division of the property.'" *In re Marriage of Williams*, No. 06-18-00041-CV, 2018 WL 6424245, at *4 (Tex. App.—Texarkana Dec. 7, 2018, pet. denied) (mem. op.) (quoting *Bigelow v. Stephens*, 286 S.W.3d 619, 620 (Tex. App.—Beaumont 2009, no pet.)). "Under an abuse of discretion standard, legal and factual sufficiency are relevant factors in assessing whether the trial court abused its discretion, but they are not independent grounds of error." *Id.* at *4 n.7 (citations omitted).

"The party complaining of the trial court's property division must demonstrate from evidence in the record that the division was so unjust that the trial court abused its discretion." *Id.* "In determining whether an abuse of discretion has occurred, we view the evidence in a light most favorable to the [trial] court's decision and indulge every legal presumption in favor of its judgment." *In re Marriage of Ford*, 435 S.W.3d 347, 350 (Tex. App.—Texarkana 2014, no pet.). "If there is any reasonable basis for doing so, we must presume that the trial court properly exercised its discretion." *In re Marriage of Williams*, 2018 WL 6424245, at *4.

## 2. The Residence

Wife contends that the trial court abused its discretion by "rendering a ruling that does not display an equitable/right and just division of property." This contention consists of two subparts.

First, Wife maintains that the trial court's final decree divests Gettis of her interest in the Residence. Second, Wife asserts that Husband was awarded a disproportionate share of the Residence's equity because the trial court did not account for Gettis's third-party interest in the property. Because Wife lacks standing to complain of Gettis's alleged divestment and because the record before the trial court does not demonstrate a third-party interest in the Residence, we disagree.

### a. Wife Lacks Standing to Complain of Gettis's Interests

In issues four through six, nine through eleven, and seventeen, Wife complains that the trial court's final decree "impermissibly deprived the majority homeowner, [Gettis], of her property and equity rights without the benefit of due process of law."[12]

However, Wife lacks standing to complain on behalf of Gettis's due process rights or alleged interests in the Residence.[13] "An appealing party may not complain of errors that do not injuriously affect her or that merely affect the rights of others." *Buckholts Indep. Sch. Dist. v. Glaser*, 632 S.W.2d 146, 150 (Tex. 1982); *In re M.T.R.*, 579 S.W.3d 548, 568 (Tex. App.—Houston [14th Dist.] 2019, pet. denied).

Wife has failed to explain how the refinancing or sale of the Residence would injure or affect her own rights. Therefore, we conclude that Wife lacks standing to complain about any possible errors affecting Gettis's purported rights or interests in the Residence. *See Glaser*, 632 S.W.2d at 150. Because Wife lacks standing to complain of Gettis's potential interests in the Residence, we overrule her fourth, fifth, sixth, ninth, tenth, eleventh, and seventeenth issues.

---

[12]Wife maintains that Gettis was a necessary party to be joined, but Gettis did not file a plea in intervention and was never added as a party.

[13]Although Gettis filed a motion to vacate the oral rendition at trial, she never urged the motion. At the hearing on Wife's motion for new trial, Gettis did not appear, and Wife's attorney explained that "there's no motion on behalf of [Gettis] today . . . or by her estate today." Nor has her estate brought an appeal.

## b. State of the Evidence

Wife complains that Husband was awarded a disproportionate share of the Residence's equity because the trial court failed to consider Gettis's interest in the property. However, because no evidence was presented at the January trial to support her contention, we disagree.

Wife did not appear for trial in January 2024, and the trial court found that she "was provided notice of [the] proceeding and wholly made default." Thus, our review is limited to the evidence that was presented at the trial.

At trial, Husband testified that he and Wife purchased the Residence in December 2019—while they were married—and that the mortgage was only in Wife's name. Husband requested to be awarded a fifty percent equity of the Residence. The trial court then awarded the Residence to Wife subject to Husband's fifty percent equity interest. The trial court's final decree ordered Wife to refinance the Residence solely into her name within sixty days and pay Husband $145,350.81 from the refinanced amount. The final decree further ordered Wife to sell the Residence if she did not refinance it within seven months.

Wife complains that the trial court erred by presuming the Residence was entirely community property. And yet, there was no presumption on the part of the trial court—the evidence presented at trial showed that Husband and Wife acquired

12

the residence during their marriage.[14]  No evidence was presented to the trial court that Gettis or any other third party had an interest in the Residence.

The trial court did not abuse its discretion when it concluded that the Residence was community property.  And having determined it to be community property, the trial court then equally divided the Residence's equity between Husband and Wife.  Based on the evidence presented at trial, we conclude the trial court had a reasonable basis for its division of the marital estate.  *See Watson*, 286 S.W.3d at 522. Wife has failed to "demonstrate from evidence in the record that the division was so unjust that the trial court abused its discretion."  *In re Marriage of Williams*, 2018 WL 6424245, at *4.  Therefore, we hold that the trial court did not abuse its discretion in its division of the Residence, and we overrule Wife's first, second, third, seventh, twelfth, and thirteenth issues.  *See In re Marriage of Ford*, 435 S.W.3d at 350.

We note that a party's failure to comply with pleading requirements can certainly have grave consequences.  This is one of those cases.  The general warranty deed included in Wife's first amended motion for new trial unmistakenly lists Gettis as a third grantee on the Residence.  However, by failing to plead the *Craddock* factors,[15]

---

[14]Wife does not challenge the sufficiency of the evidence to support the trial court's finding that the Residence is community property, but instead, she argues that the trial court mistakenly treated the Residence as "one hundred percent solely owned by [Wife] and [Husband]."

[15]A defaulting party may challenge a default judgment in a motion for new trial. A default judgment should be set aside and a new trial ordered in any case in which a defaulting party satisfies the *Craddock* test.  *Craddock*, 133 S.W.2d at 126.  The test set

Wife was not entitled to a new trial, and the deed was never properly before the trial court. Although the deed purports to be relevant and authentic, it was not subjected to scrutiny or objection by Husband at trial. We recognize that Wife may have an otherwise legitimate—though untested—argument that the community property was improperly determined, but she failed to properly present evidence to that effect to the trial court.

## B. ATTORNEY'S FEES

In the second group, issues fifteen and sixteen, Wife asserts that the trial court abused its discretion by awarding Husband's attorney $900 in attorney's fees because

---

out in *Craddock* contains three prongs, each of which a defaulting party must satisfy: (1) present facts showing that the failure to appear was not intentional or the result of conscious indifference but was due to accident or mistake, (2) set up a meritorious defense; and (3) file the motion for new trial when it would not cause delay or otherwise injure the prevailing party. *Id.* When the party requesting a new trial following a default judgment meets all three prongs, it is an abuse of discretion if the trial court fails to grant the motion.

Wife timely filed a motion for new trial, yet she did not challenge her failure to appear or the default judgment. Instead, she complained that the trial court lacked authority to award the Residence to her, thereby divesting Gettis of her interest in the property. Included in her motion, Wife attached a purported copy of the Residence's general warranty deed with vendor's lien, which listed Husband, Wife, and Gettis as the grantees. However, her motion neither pleaded that her failure to appear was due to accident or mistake nor that a new trial would not cause delay or injury to Husband. *See Craddock*, 133 S.W.2d at 126. At the hearing on her motion for new trial, Husband argued that Wife's motion should be denied because she failed to plead the *Craddock* factors. The trial court agreed, and it denied Wife's motion for new trial. Wife does complain of the trial court's denial of her motion for new trial.

14

the final decree specified that the parties are responsible for their own fees.[16]  Because she has inadequately briefed these issues, her complaints are waived.

### 1.  Standard of Review and Applicable Law

An appellant bears the burden of identifying and explaining how the trial court erred.  *Gunderson v. Nat'l Indoor RV, LLC*, No. 02-24-00025-CV, 2024 WL 3365233, at *2 (Tex. App.—Fort Worth July 11, 2024, no pet. h.) (mem. op.).  A crucial part of that burden is the appellant's responsibility to "present argument that will enable the [appellate] court to decide the case" by filing a brief that . . . "contain[s] a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record."  Tex. R. App. P. 38.1(g), (i), 38.9; *see also Gunderson*, 2024 WL 3365233, at *2.

While we construe appellate briefs liberally and attempt to reach the merits of the dispute whenever reasonably possible, *see* Tex. R. App. P. 38.9; *Horton v. Stovall*, 591 S.W.3d 567, 569 (Tex. 2019), absent "citations for legal references" and "substantive [legal] analysis," a brief is inadequate to present an issue for our review, and the issue is waived."  *Gunderson*, 2024 WL 3365233, at *2 (quoting *NexPoint Advisors, L.P. v. United Dev. Funding IV*, 674 S.W.3d 437, 446 (Tex. App.—Fort Worth 2023, pets. denied)); *see In re Guardianship of Onyebuchi*, No. 02-13-00401-CV, 2014 WL 4463114, at *2 (Tex. App.—Fort Worth Sept. 11, 2014, pet. denied) (mem. op.)

---

[16]Wife does not challenge the reasonableness or necessity of the award of attorney's fees.

15

(recognizing that "arguments raised on appeal that are unsupported by analysis or appropriate citation to legal authority and to the record present nothing for us to review").  The "[f]ailure to cite applicable authority or provide substantive analysis waives an issue on appeal."  *Huey v. Huey*, 200 S.W.3d 851, 854 (Tex. App.—Dallas 2006, no pet.); *see also* Tex. R. App. P. 38.1(i); *Fredonia State Bank v. Gen. Am. Life Ins. Co.*, 881 S.W.2d 279, 284 (Tex. 1994) (observing that error may be waived by inadequate briefing); *see also Amir-Sharif v. Mason*, 243 S.W.3d 854, 856 (Tex. App.—Dallas 2008, no pet.) ("A pro se litigant is held to the same standards as licensed attorneys and must comply with applicable laws and rules of procedure." (first citing *Mansfield State Bank v. Cohn*, 573 S.W.2d 181, 184–85 (Tex. 1978); and then citing *Strange v. Cont'l Cas. Co.*, 126 S.W.3d 676, 677 (Tex. App.—Dallas 2004, pet. denied))).

## 2.  Inadequate Briefing

The entirety of Wife's argument regarding the trial court's award of attorney fees consists of the following:

> The Appellant was ordered to pay $900.00 of the Respondent's legal costs after the decree was signed specifically stating the opposite.  A motion requesting $900.00 was not properly submitted or filed, conferenced, or served and the signed divorce order on page 37 displays that attorney fees "are to be borne by the party who incurred them".

Where, as here, an appellant provides no legal analysis and no citations to relevant legal authorities, nothing is presented for our review.  *See Sister Initiative, LLC v. Broughton Maint. Ass'n*, No. 02-19-00102-CV, 2020 WL 726785, at *25 (Tex. App.—Fort Worth Feb. 13, 2020, pet. denied) (mem. op.) ("An appellant's failure to cite legal

16

authority to or provide substantive analysis of a legal issue presented results in waiver of the appellant's complaint."); *AMX Enters., L.L.P. v. Master Realty Corp.*, 283 S.W.3d 506, 525 (Tex. App.—Fort Worth 2009, no pet.) (op. on reh'g) ("An issue unsupported by citation to any legal authority presents nothing for the court to review."); *Karen Corp. v. Burlington N. & Santa Fe Ry. Co.*, 107 S.W.3d 118, 125 (Tex. App.—Fort Worth 2003, pet. denied) ("For this court to rule on an issue on appeal, the party who brings the point forward must support it by argument and authorities."); *see also San Saba Energy, L.P. v. Crawford*, 171 S.W.3d 323, 338 (Tex. App.—Houston [14th Dist.] 2005, no pet.) (holding that—"[e]ven under a liberal construction" of the briefing requirements—appellant inadequately briefed issue where it "cite[d] no part of the record and ma[d]e no specific [legal] argument").

The portion of Wife's brief dedicated to her complaint of attorney's fees contains neither substantive legal analysis nor citation to legal authority in support of her request for relief. *See Gunderson*, 2024 WL 3365233, at *3 (holding appellant inadequately briefed issues due in part to brief's "complete absence of applicable case law or substantive legal analysis"). Ultimately, Wife does not pinpoint which specific statute or rule entitles her to relief, and she does not cite to any case law to support her arguments. *See id.* at *4 (holding issues inadequately briefed when appellant broadly referenced "textbook law" without citation to legal authority). Instead, Wife appears to assume that this court will fill in the gaps by sifting through the record, researching the relevant case law, and applying the specific provisions and precedent

17

applicable to her case—presumably with the hope that we will select the statutes and precedent that benefit her the most. We would be "abandon[ing] our role as a neutral adjudicator" were we to "search[ ] the record for facts . . . favorable to [a party's] position," "do[ ] the legal research that might support [her] contentions," and then "resolv[e] the appeal based on the legal arguments we crafted on [Wife's] behalf." *Id.* at *2–4 (internal quotations omitted).

Wife's brief makes conclusory statements that are unsupported by argument or citation to legal authorities and presents nothing for review. *In re C.R.A.*, 453 S.W.3d 623, 633 (Tex. App.—Fort Worth 2014, no pet.). Therefore, given the complete absence of authority and the lack of substantive legal analysis, we conclude that she has inadequately briefed her fifteenth and sixteenth issues Accordingly, we hold that Wife's fifteenth and sixteenth issues are waived. *See Gunderson*, 2024 WL 3365233, at *4 (holding appellant waived issues due to his "sparse record references, lack of legal citations, and failure to provide any meaningful analysis of his appellate issues").

## C. ORAL RENDITION VERSUS FINAL DECREE

In this final group of issues, Wife asserts a myriad of complaints. In her eighth and fourteenth issues, Wife contends that portions of the trial court's final decree do not comport with its oral rendition at trial. Specifically, Wife complains in her eighth issue that the final decree is inconsistent with the oral rendition because the final decree requires her to refinance or sell the Residence. Likewise, in her fourteenth issue, she asserts that the oral rendition included a school-enrollment provision (also

18

found in the temporary orders) that is absent from the final decree. And while we agree that the complained-of inconsistencies are present in the final decree, Wife's arguments lack merit because the trial court retained plenary power over its judgment and was free to modify it.

As for her eighteenth through twenty-first issues, Wife challenges the trial court's findings of facts, but those complaints fail because the trial court retained plenary power, and the issues are inadequately briefed.

### 1. Standard of Review and Applicable Law

Rendition is the act by which the trial court declares the decision of the law upon the matters at issue. *Comet Aluminum Co. v. Dibrell*, 450 S.W.2d 56, 58 (Tex. 1970). A judgment is rendered when the decision is officially announced either orally in open court or by written memorandum filed with the clerk. *Samples Exterminators v. Samples*, 640 S.W.2d 873, 875 (Tex. 1982); *Bakali v. Bakali*, 830 S.W.2d 251, 254 (Tex. App.—Dallas 1992, no writ). Entry of a written judgment is a ministerial act reflecting the court's action. *Bakali*, 830 S.W.2d at 254.

Until thirty days after the judgment is signed, the trial court has plenary power to vacate, modify, correct, or reform its judgment at any time before it becomes final. Tex. R. Civ. P. 329b(d); *Mesa Agro v. R.C. Dove & Sons*, 584 S.W.2d 506, 508 (Tex. App.—El Paso 1979, writ ref'd n.r.e.). During this period, the trial court's power to modify its judgment is virtually absolute. *Garza v. Serrato*, 671 S.W.2d 713, 714 (Tex. App.—San Antonio 1984, no writ). Before the trial court signs a judgment, it "can

19

change the decision previously announced without any formal order setting it aside."

*Kostura v. Kostura*, 469 S.W.2d 196, 198 (Tex. Civ. App.—Dallas 1971, writ ref'd n.r.e.).

The *Kostura* court further stated:

> If he [trial judge] finds that the draft varies from his judgment, he must decide whether to make the draft conform to his judgment or change his judgment in accordance with the draft. If he signs the draft, the judgment entered is presumptively the judgment as he finally intends it, and it ought not to be subject to change on a bare showing that it varies in some particular from the judgment as first announced.

*Id.* at 199.

Given this plenary power, it is within the trial court's discretion to issue a written decree that is modified from its oral ruling. *Mathes v. Kelton*, 569 S.W.2d 876, 877–78 (Tex. 1978); *Allen v. Allen*, 646 S.W.2d 495, 496 (Tex. App.—Houston [1st Dist.] 1982, no writ). There is no requirement that the trial court hear new evidence before exercising its plenary power to modify the terms of its oral ruling. *See* Tex. R. Civ. P. 329b; *Allen*, 646 S.W.2d at 496. When an inconsistency exists between the trial court's oral pronouncement at a hearing and its subsequent written order, the written judgment controls over the oral ruling. *In re K.M.B.*, 148 S.W.3d 618, 622 (Tex. App.—Houston [14th Dist.] 2004, no pet.).

### 2. Final Decree was a Modification of the Oral Rendition

At the conclusion of trial, the trial court made an oral rendition of its ruling and instructed Husband to draft the final decree. The trial court ruled that,

20

[i]n regards to conservatorship of the child, the [trial court] designates [Wife] as the person to determine the residence of the child[,] appointing the parties as temporary joint managing conservators.

Rights and duties shall be set out as set out in the temporary orders entered by this Court on January 13, 2023, except [Wife] shall have the right to designate the residence of the child within Denton and contiguous counties within the [S]tate of Texas.

. . . .

[Husband] shall have a lien on the property for 50 percent of the equity accumulated through January 23, 2024, until paid in full.

The temporary orders entered by the trial court on January 13, 2023, included a provision that provided Wife "shall have the exclusive right to enroll the child in school." However, the final decree does not include this school-enrollment provision. Also, as set out above, the trial court's oral rendition ruled that Husband would have a lien on the Residence, but the final decree ordered that Wife either refinance or sell the Residence. Thus, the trial court's final decree—with respect to the school-enrollment provision and the award of the Residence—varied from its oral rendition at trial.

These noted variances are permissible because the final decree was not signed at the conclusion of trial, and the trial court retained plenary power over its judgment. *Mathes*, 569 S.W.2d 876, 877–78. Thus, what Wife claims to be "errors" in the written judgment are instead modifications to the terms of the judgment and were made

21

within the trial court's plenary power and discretion.[17]  *See Garza*, 671 S.W.2d at 714.

By signing the final decree, the judgment entered is presumptively the judgment as the

trial court finally intended it.[18]  *Kostura*, 469 S.W.2d at 199.  The written judgment

controls.  *K.M.B.*, 148 S.W.3d at 622.  Although the trial court signed findings of fact

and conclusions of law, it did not state any reasons for its modification, and we must

therefore presume that the trial court properly exercised its discretion.  *Cook v. Cook*,

888 S.W.2d 130, 132 (Tex. App.—Corpus Christi 1994, no writ).  Accordingly, we

overrule issues eight and fourteen.

### 3.  Challenges to Findings of Fact and Conclusions of Law

In issues eighteen and nineteen, Wife claims to challenge the trial court's

findings of fact and conclusions of law.  But substantively, these issues are merely a

reiteration of the complaints regarding the variances between the trial court's final

decree and its oral rendition.

---

[17]We also note that Husband filed a motion for clarification—prior to the trial court's signing of the final decree—that requested provisions for the refinancing or sale of the Residence.  *See* Tex. Fam. Code Ann. § 9.007(b); *see also McPherren v. McPherren*, 967 S.W.2d 485, 490 (Tex. App.—El Paso 1998, no pet.) (discussing that clarifying orders more precisely specify the manner of carrying out the property division previously ordered).

[18]With respect to Wife's complaint that the school-enrollment provision is absent in the final decree, she attempted to raise this discrepancy with the trial court at the time the final decree was signed.  The trial court responded that "the Court ordered that the conservatorship rights and duties remain the same.  That doesn't necessarily mean it's going to be written up exactly like it was in the temporary orders."

Wife does not challenge the evidentiary sufficiency for the trial court's findings of fact and conclusions of law.[19] Instead, she argues that the findings contradict the trial court's oral rendition. Wife does not, however, assert that the trial court's findings of fact are inconsistent with the evidence at the January 2024 trial or contradict its final decree. Quite the opposite. Wife instead complains that the trial court erroneously relied on the final decree, rather than the oral rendition at the January trial, when creating the findings of fact

But, as we have held, the trial court retained plenary power to modify its oral rendition, which it did when it signed the final decree. *Garza*, 671 S.W.2d at 714. The trial court then made findings of fact based on the evidence presented at trial. Because the trial court did not abuse its discretion in modifying its oral rendition by signing the final decree, our holding for Wife's eighth and fourteenth issues is dispositive of her eighteenth and nineteenth issues. As there was no abuse of discretion in the final decree, we likewise hold that the corresponding findings of fact are supported by the record. We overrule Wife's eighteenth and ninetieth issues.

In issues twenty and twenty-one, those complaints are inadequately briefed. Wife's only complaint in these issues is that the findings of fact and conclusions of

_____

[19]We review the sufficiency of the evidence supporting the trial court's challenged findings using the same standards that we apply to jury findings. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994). We defer to the trial court's findings of fact—so long as they are supported by the record—and review conclusions of law de novo. *Sw. Elec. Power Co. v. Lynch*, 595 S.W.3d 678, 683 (Tex. 2020).

law "can be proven as inaccurate." But aside from making these assertions, Wife fails to (1) identify which findings of fact or conclusions of law "can be proved as inaccurate" and (2) make record references in support of her claim.[20] Rather, much like her attorney's fee issues, she makes conclusory statements that are unsupported by argument or citation, and thus, presents nothing for review. *C.R.A.*, 453 S.W.3d at 633.

In sum, not only are we unsure of which specific findings Wife seeks to challenge, but she has not provided us with any references to the record containing evidence that prove the findings as inaccurate.[21] We conclude that Wife has inadequately briefed issues twenty and twenty-one, and we hold that those issues are waived. *See Gunderson*, 2024 WL 3365233, at *4. Accordingly, we overrule Wife's twentieth and twenty-first issues.

---

[20]Wife's brief identifies three findings of fact that differ from the trial court's oral rendition. However, she makes no references to evidence in the record that would controvert or "prove as inaccurate" the trial court's findings of fact. Although Wife's brief highlights alleged inconsistencies, it does not point us to any evidence in the record to support her contentions that the trial court's findings are somehow inaccurate.

[21]If Wife's contention is that all of the findings are inaccurate because they were erroneously based on the trial court's final decree instead of its oral rendition, as we have held above, that argument is unavailing.

## IV.  CONCLUSION

Having overruled Wife's twenty-one issues, we affirm the trial court's judgment.  Tex. R. App. P. 43.2(a).

/s/ Brian Walker

Brian Walker
Justice

Delivered:  July 10, 2025